1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13

JOHN C. LEIKNESS                                    )
                                    Plaintiff,      )        CASE NO. C04-2348MJB
                                                    )
        v.                                          )        MEMORANDUM
                                                    )        OPINION
COMMISSIONER OF SOCIAL SECURITY,                    )
                                                    )
                                    Defendant.      )
_____)

14      Plaintiff John C. Leikness appeals to the District Court from a final decision of the

15 Commissioner of the Social Security Administration ("Commissioner") denying his application

16 for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  The

17 parties consented to the undersigned U.S. Magistrate Judge to decide this appeal. matter.  For

18 the reasons set forth below, the Commissioner's decision declining to award benefits shall be

19 REMANDED for a rehearing on the duration of Plaintiff's disability.

20                          I.  PROCEDURAL HISTORY

21      On August 22, 2000, Plaintiff applied for SSI, just two months after suffering a brain

22 injury as a victim of a vicious assault involving a baseball bat. (Tr. 85).  The Social Security

23 Administration ("SSA") granted Plaintiff's disability benefits from June 28, 2000 through April

24 18, 2002. (Tr. 46-54).  However, the SSA denied Plaintiff benefits after April 18, 2002 based on

25

26 MEMORANDUM OPINION
   Page - 1

1  a finding that Plaintiff had the residual functional capacity to perform sedentary and light work

2  with some limitations. (Tr. 46-54).   John F. Bauer, the Administrative Law Judge (hereinafter

3  "ALJ") determined for that time period, Plaintiff's conditions were not severe enough and denied

4  Plaintiff disability status initially (Tr. 63) and upon reconsideration (Tr. 69).  At the hearing

5  before the ALJ on March 19, 2003, Plaintiff was represented by counsel and testified; his father,

6  John A. Leikness, Dr. C. Richard Johnson, a medical expert, and Donald Watson, a vocational

7  expert, also testified.  (Tr. 46).  The ALJ's decision on October 25, 2003, found that Plaintiff

8  was not disabled as of April 19, 2002.  (Tr. 46).  On September 19, 2004, the Appeals Council

9  denied Plaintiff's request for review of the ALJ's decision, making it the final decision.  (Tr. 36).

10  Plaintiff timely filed his appeal with this Court.

11

12                        II.  THE PARTIES' POSITIONS

13          Plaintiff requests that the Court reverse the Commissioner's final decision finding Plaintiff

14  not disabled after April 18, 2002 with a remand for a rehearing to determine the duration of

15  Plaintiff's disability.  Plaintiff argues that the ALJ erred by:

16          1)      not providing specific and legitimate reasons when finding that Plaintiff's
                    depression was not a severe impairment and when rejecting the opinions of
17                  Kenneth Muscatel, Ph.D., and Plaintiff's father, John A. Leikness;

18          2)      rejecting Plaintiff's own subjective descriptions of pain and depressive symptoms;

19          3)      failing to include Plaintiff's depression and social withdrawal limitations as
                    determined by Kenneth Muscatel PhD., and Marie Crawford, MHP, when
20                  determining Plaintiff's Residual Functional Capacity ("RFC"); and

21          4)      failing to give a complete hypothetical to the vocational expert regarding
22                  Plaintiff's depression and social withdrawal limitations.

23          The Commissioner argues that the ALJ's decision finding Plaintiff not disabled after April

24  18, 2002, should be affirmed because it was supported by substantial evidence and free of legal

25

26  MEMORANDUM OPINION
    Page - 2

1  error.

2                     III. SUMMARY OF THE RECORD EVIDENCE

3  A. Injury and Past Employment

4          On June 28, 2000, at the age of 22, Plaintiff suffered traumatic brain injury after a severe

5  beating from a criminal assault, resulting in seizures, headaches, cognitive limitations, psychiatric

6  problems and physical instability.  (Tr. 7).  He was employed as an apprentice glazier at the time

7  of the injury and possesses a 12th grade education. (Tr.440).

8  B. Medical Evidence of Impairments

9          Disability was found for the time period preceding April 19, 2002, and thus, the summary

10 of evidence will be restricted to medical conditions present after that date.  Relevant here are the

11 reports concerning the depressive effects of his Post Traumatic Stress Disorder ("PTSD").  This

12 is partially addressed by the reports submitted by Drs. Richard E. Marks and Roy D. Clark, dated

13 April 18, 2002, and prepared for the Department of Labor and Industries Crime Victim Section

14 (Tr. 437-457), and by Kenneth Muscatel, Ph.D., dated April 19, 2002. (Tr. 458-469).

15         Dr. Marks and Dr. Clark concluded that Plaintiff's neurological impairments had reached

16 a stable plateau, however, subject to Dr. Muscatel's conclusions.  (Tr. 455).  Dr. Muscatel found

17 Plaintiff suffered from severe to moderate depression. (Tr.468).  As markedly impaired, Plaintiff

18 needed both continued psychological and pharmacological intervention.  To rate his findings, Dr.

19 Muscatel assigned a GAF score of  55-65.  (Tr. 469).  As repeated in the briefs, Muscatel opined

20 that  Plaintiff had a "fairly remarkable recovery of mental skills considering the severity of his

21 brain injury."  However, "his mood state, is *markedly* impaired with depression, anxiety social

22 withdrawal and disturbance of self-image and self-esteem." (Tr. 468).  (Emphasis added.)

23         Seattle Mental Health provided counseling services to Plaintiff during the relevant time

24 period and Ms. Marie Crawford, MHP, made findings in her report dated November 13, 2002.

25
   MEMORANDUM OPINION
26 Page - 3

(Tr. 470-473).  Assessing Plaintiff's cognitive factors, Ms. Crawford concluded that they were limited to a range from mild to marked, also finding him to be chronically mentally ill. Accordingly, she found Plaintiff unable to work and that these limitations would  likely last twelve (12) months at a maximum and six (6) months at a minimum.  (Tr. 472-473).  By August, 2003, Plaintiff reported things were going well, but still had occasional bouts of depression.  (Tr. 538).[1]

B.  Hearing Testimony

On March 19, 2003, ALJ Bauer[2] heard testimony from Plaintiff, his father, a medical expert and a vocational rehabilitation expert.  (Tr. 550- 607).  Plaintiff complained of imbalance while standing and having "major headaches."  Plaintiff complained of a persistent fear of being alone in his apartment when he takes a shower.  (Tr. 561-2).  He was involved in on-going custody proceedings to gain partial custody of his two daughters. (Tr. 566-67).   Due to the assault, he complained that he would not want to go to school or be around people.  (Tr. 571- 572).  If lifting something over his head, he complained of "mad " pressure in his head.  (Tr. 577).  Headaches occur two to three times a week and last "a good half an hour." (Tr. 578).  His dreams replay the criminal assault "every morning."  (Tr. 580).

John A. Leikness also testified to his son's abilities.  He described an incident during a child custody proceeding, while in a judge's chambers, where his son lost control and walked out due to his limited ability to handle frustration.  (Tr. 585-586).  Plaintiff's father also described daily activities that include watching tv, playing video games, cooking and daily hygiene.  (Tr.

---

[1] His physical limitations continued to stabilize as documented in Dr. Longstreth's report of  January 2, 2003.  Plaintiff had not suffered any additional convulsions in a one year period, due to his continued use fo Dilantin. (Tr.474).

[2] The ALJ's rude remarks to this Plaintiff do not bear repeating, however suffice to say, that his inappropriateness is not worthy of a judicial officer. (Tr. 551)

MEMORANDUM OPINION
Page - 4

1    586-588).

2           C. Richard Johnson, M.D., with a specialty in psychiatry, also testified.  He summarized

3    Dr. Muscatel and Dr. Clark's conclusions as Plaintiff having a *mild* and nearly resolved mood or

4    emotional liability and concluded that the GAF score of 55-65 reflected moderate symptoms,

5    with 50 considered severe and 60 considered moderate. (Tr. 590-593).  Yet during cross-

6    examination, Plaintiff's counsel identified an important discrepancy, forcing Dr. Johnson to agree

7    that the 55-65 GAF score more accurately reflects a depressive disorder that is severe to

8    moderate *and not* mild.  (Tr. 594).  Additionally, Dr. Johnson identified the existence of sleep

9    disturbances with at least two marked symptoms: nightmares and the unwillingness to go around

10   people.  (Tr. 596).  Equally important, Dr. Johnson did not assess Plaintiff's subjective

11   complaints as malingering. (Tr. 597).

12          The vocational expert, Donald Watson, was asked by the ALJ to assume that

13    a) Plaintiff uses a seizure medication and b) Plaintiff should not work around heights or moving

14   machinery.  Watson concluded on those facts alone, Plaintiff could work at several jobs.  (Tr.

15   599).  The ALJ followed up by asking Watson to also assume two additional factors,  a) Plaintiff

16   is limited to sedentary / light work and b) Plaintiff should have limited interaction with the public

17   and co-workers.  Watson found there were jobs Plaintiff could do, for example: 1) an agricultural

18   grader or sorter, 2) light assembly worker, and/or 3) video surveillance.  (Tr. 600).  After

19   modifying this estimate for employment in the Northwestern United States, Watson testified that

20   there were 2,500 jobs as sorters; 31,000 as assembly workers,1600 jobs in  surveillance work.

21          Watson revised his conclusions markedly, however, on cross-examination by Plaintiff's

22   counsel.  First, regarding surveillance work, when Watson was asked to consider Plaintiff's

23   difficulty with bright lights, Watson eliminated this option.  (Tr. 602).  Second, Watson was

24   asked to consider Plaintiff's headaches and his numbness in his right hand, then Watson

25
     MEMORANDUM OPINION
26   Page - 5

eliminated assembly work.  Finally, on the issue of Plaintiff's ability to follow directions and criticism from supervisors, Watson eliminated grading and sorting work. (Tr. 603-604).   The net effect of this cross-examination was to leave a record with no identifiable jobs in the marketplace.

## IV.  THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since at least June 28, 2000, his alleged onset date. (Tr. 52).  At step two, the ALJ determined that Plaintiff had the following severe impairments: convulsive neurological disorder as a result of brain injury; organic mental disorder as a result of brain injury; and affective disorder.  (Tr. 52).  At step three, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of a listed impairment. (Tr. 52).  At step four, the ALJ determined that for the period June 28, 2000 through April 18, 2002, Plaintiff was unable to perform full-time sustained work activity even in the sedentary and light range of exertion, thus making him unable to perform his past relevant work as a glazier.  (Tr. 51).  The ALJ further found, however, that starting April 19, 2002, Plaintiff had the RFC to perform sedentary and light exertion, with the following limitations: he should not work around ladders, ropes, and scaffolds or with dangerous machinery; he is restricted to simple and routine tasks; and he would do best in a job that did not require more than limited contact with the public and co-workers. (Tr. 53).  Lastly, at step five, the ALJ found Plaintiff could perform other work existing in significant numbers in the national economy beginning April 19, 2002.  (Tr. 52).  The ALJ, therefore, found Plaintiff was under a disability, as defined in the Social Security Act, but only for the period June 28, 2000, through April 18, 2002, and not thereafter. (Tr. 53).

## V.  STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## VI.  EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or metal impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).

The Social Security Regulations set out a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act.  *See* 20 C.F.R. § 416.920.  At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  At step two, the claimant must establish that he or she has one or more medically severe impairments or a combination of impairments.  If the claimant does not have a "severe" impairment, he or she is not disabled.  *Id.*

MEMORANDUM OPINION
Page - 7

at § (c).  At step three, the Commissioner will determine whether the claimant's impairment(s) meets or equals any of the listed impairments described in the regulations.  A claimant who meets one of the listings is disabled.  *See Id.* at § (d).

At step four, if the claimant's impairment(s) neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work. *Id.* at § (e).  If the claimant is not able to perform his or her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience.  *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled.

# VII.  DISCUSSION

Plaintiff claims four errors requiring reversal of the ALJ's final decision as well as a remand for rehearing: 1) the ALJ erred by not providing specific and legitimate reasons in finding Plaintiff's depression was not a severe impairment while rejecting the opinions of Dr. Muscatel and Plaintiff's father; 2) the ALJ erred when he rejected Plaintiff's subjective complaints; 3) the ALJ erred by failing to include Plaintiff's depression and social withdrawal limitations in determining Plaintiff's Residual Functional Capacity ("RFC"); and 4) the ALJ erred by failing to give a complete hypothetical to the vocational expert regarding Plaintiff's depression and social withdrawal limitations.

A.  Depression After April 18, 2002.

Plaintiff argues that the ALJ erred by not providing specific and legitimate reasons in

MEMORANDUM OPINION
Page - 8

1  finding his depression was not a severe impairment. (Tr. 50-51).  Plaintiff also contends that in

2  doing so, the ALJ erroneously rejected the opinions of Kenneth Muscatel, Ph.D., and of

3  Plaintiff's father.  The Commissioner responded by emphasizing that the ALJ found an affective

4  disorder defined as severe, but not severe enough to meet or equal the listing at step three.

5  Moreover, she argues that this affective disorder was a) considered in the RFC assessment and b)

6  reflected in the inquiries to the vocational expert.

7  The ALJ must provide "specific and legitimate reasons based on substantial evidence in

8  the record" when rejecting an examining physicians opinion.  *See Andrews v. Shalala*, 53F.3d

9  1035, 1043 (9th Cir, 1995).  "The ALJ can meet this burden by setting out a detailed and

10  thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof,

11  and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751(9th Cir. 1989).    *1. Testimony*

12  *of Dr. Muscatel*

13  At the request of the Washington State Department of Labor and Industries, Crime

14  Victim Division, Plaintiff underwent an examination by a panel of medical experts, one of which

15  included an examination by Kenneth Muscatel, Ph.D., neuropsychology, on April 19, 2002.  (Tr.

16  458-469).  Dr. Muscatel's GAF scoring of 55-65 conveyed a potentially moderate to severe

17  depressive disorder.  Moreover, Plaintiff's psychiatric state was considered a major impediment

18  to Plaintiff's future successful adjustment to his life and work, rather than Plaintiff's neuro-

19  cognitive capacities. (Tr. 468-469).  Dr. Muscatel finally opined that Plaintiff would benefit from

20  aggressive psychiatric intervention, including pharmacological intervention. (Tr. 468).

21  While the record is replete with conclusions regarding Plaintiff's continued disability due

22  to depression until August 2003, the record also demonstrates the ALJ's disregard of Dr.

23  Muscatel's finding and recommendation.  The ALJ gave reasons for this partial rejection of Dr.

24  Muscatel's findings of depression for the period after April, 2002, because of Plaintiff's increased

25

26  MEMORANDUM OPINION
Page - 9

activities.  The ALJ explained that such activities did not support Plaintiff's allegation of self-isolation and fear of being around others. (Tr. 49-51).  As this Court views the record, the increased activity did not markedly improve until later in 2003, as reflected in the mental health notes of August, 2003.  Thus, substantial evidence from the complete record does not justify the ALJ's conclusion and improper rejection the opinion of Dr. Muscatel.

### 2. *Testimony of Plaintiff's Father*

John A. Leikness, Plaintiff's father, testified to Plaintiff's depression, anxiety, and withdrawal, attributing it to Plaintiff's mental and physical problems.  (Tr. 584-586).  Mr. Leikness also testified to Plaintiff getting "fired up," which would lead Plaintiff becoming disconnected with others.  (Tr. 586-587).

The ALJ is required to consider the statements of a layperson when examining mental health problems.  *See Schneider v. Commissioner of Social Security*, 223 F.3d 968 (9th Cir. 2000).  The ALJ may not disregard such testimony without giving reasons germane to each witness whose testimony he rejects.  *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).  While the ALJ did consider Mr. Leikness's testimony, he appeared to attribute the same improper reasoning he gave for rejecting Dr. Muscatel.  The records of Drs. Clark and Marks, in combination with those of Dr. Muscatel, belie the erroneous conclusions made by the ALJ.  (Tr. 51).  This was error.

### 3. *Plaintiff's Subjective Complaints*

*Lester v. Chater*, 81 F.3d 821, 834 (1995), explicitly requires that "once the claimant has produced medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence."  By concluding that the record does not support Plaintiff's subjective complaints, the ALJ has ignored the reports of Drs. Clark, Marks, and Muscatel.  As Plaintiff

MEMORANDUM OPINION
Page - 10

1  argues, the ALJ's rejection appears focused upon Plaintiff's past drug activity, yet the medical

2  records reflect Plaintiff's admissions of drug use.  Thus, there is insufficient reason to discredit

3  Plaintiff's credibility. (Tr. 419)

4  B. <u>Residual Functional Capacity Determination</u>

5  Plaintiff also argues that the ALJ erred by failing to include Plaintiff's depression and

6  social withdrawal limitations in determining Plaintiff's RFC.  Plaintiff also contends that in doing

7  so, the ALJ erroneously rejected the opinions of examining Dr. Kenneth Muscatel and of Marie

8  Crawford.  The Commissioner asserts that the determination of Plaintiff's RFC is not a medical

9  issue, rather it is an administrative finding and that the final responsibility for deciding such issues

10  is reserved to the Commissioner.

11  *1. Testimony of Dr. Muscatel*

12  The ALJ found that Plaintiff was not able to return to previous work but was able to

13  perform the exertional demands of sedentary and light exertion work activity after April 18,

14  2002. (Tr. 51-52).  Yet, Dr. Muscatel's opinion states that Plaintiff's psychiatric state was a

15  major impediment to his work life.  In his prognosis, Dr. Muscatel states that Plaintiff's

16  depressive disorder is potentially moderate to severe.  (Tr. 469).  While there is a difference

17  between moderate and severe, Dr. Muscatel concluded that Plaintiff had an impairment that will

18  continue to need treatment. The notes of August, 2003, from Seattle Mental Health, as

19  summarized below, corroborate this.  (Tr. 538).

20  *2. Testimony of Mental Health Professional Marie Crawford*

21  Marie Crawford completed a Department of Social and Health Service evaluation form

22  on November 13, 2002, in which she noted that Plaintiff was moderately limited in certain

23  cognitive factors, first, the ability to respond appropriately to and tolerate the pressures and

24  expectations of a normal work setting, and second, the ability to maintain appropriate behavior.

25

26  MEMORANDUM OPINION
Page - 11

1    (Tr. 472).  She also concluded that Plaintiff was chronically mentally ill.  Ms. Crawford's

2    conclusions are supported by Dr. Muscatel's assessment.

3           An ALJ is required to consider "other source" statements, whose opinions may be used

4    to establish medical equivalence as well as how an impairment affects the ability to work.

5    *Schneider v. Commissioner of Social Security*, 223 F.3d 968 (9th Cir. 2000).  The ALJ may not

6    disregard such testimony without giving reasons germane to each witness whose testimony he

7    rejects.  *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

8           The ALJ gave no explanation or reasoning that demonstrated that this evidence was

9    weighed at all.  Accordingly, I conclude that the ALJ incorrectly determined Plaintiff's RFC by

10   discrediting evidence in the record.

11   C.  ALJ's Hypothetical

12          Plaintiff next argues that the ALJ failed to give a complete hypothetical to the vocational

13   expert, which should have included Plaintiff's depression and social withdrawal limitations.  The

14   Commissioner argues that it is proper for an ALJ to limit a hypothetical to only those restrictions

15   that are supported by substantial evidence in the record.  *Magallanes v. Bowen*, 881 F.2d 747,

16   756 (9th Cir. 1989).  However, cross-examination by Plaintiff's counsel demonstrated the

17   shortcoming of the ALJ's inquiry.  Secondly, regarding Plaintiff's depressive condition and his

18   social withdrawal, the record made by the ALJ should have properly relied on the extensive

19   medical records from Drs. Clark, Marks, and Muscatel, and on Ms. Crawford's mental health

20   notes.  The impact of Plaintiff's counsel's cross-examination was entirely lost on the ALJ as

21   demonstrated by his lack of thorough analysis.  As such, it is clear from the *complete* record that

22   the ALJ failed to meet his burden of showing that Plaintiff could perform other work existing in

23   significant numbers in the economy.

24

25

26   MEMORANDUM OPINION
     Page - 12

1

IX. CONCLUSION

2          Based upon the record evidence, Plaintiff suffered from a severe impairment of

3 depression and may continue to do so.  Hence, this Court hereby REMANDS this matter to the

4 Social Security Administration for a new hearing to determine the duration of Plaintiff's disability

5 after April 19, 2002.

6          DATED this 23rd day of September, 2005.

7

8

9          _____
           MONICA J. BENTON
10         United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  MEMORANDUM OPINION
    Page - 13